UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURT R. PERRINE,

        Plaintiff,

                                        Civil Action No. 10-CV-14934

vs.                                    HON. MARK A. GOLDSMITH

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

**OPINION AND ORDER (1) REJECTING THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, (2) GRANTING PERRINE'S MOTION FOR SUMMARY
JUDGMENT, (3) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND (4) REMANDING FOR FURTHER CONSIDERATION**

**I.    Introduction**

      This is a social security case.  Plaintiff Kurt Perrine appeals from the final determination

of the Commissioner of Social Security denying his application for disability benefits and

supplemental security income under the Social Security Act, 42 U.S.C. § 1381(a), et seq.  The

matter was referred to Magistrate Judge Charles E. Binder for all pretrial proceedings.  The

parties have filed cross motions for summary judgment.  Magistrate Judge Binder issued a report

and recommendation (R&R) affirming the decision of the Administrative Law Judge (ALJ), and

recommending that the Commissioner's motion be granted and that Plaintiff's motion be denied.

Plaintiff has filed objections to the R&R.  For the reasons that follow, the Court will reject the

R&R, grant Plaintiff's motion for summary judgment, deny the Commissioner's motion for

summary judgment and remand the case to the ALJ for further consideration.

## II.      Factual and Procedural Background

Plaintiff Kurt Perrine suffers from multiple sclerosis.  Pl. Mot. ¶ 3 (Dkt. 8).  In his testimony before the ALJ, Plaintiff testified to various problems associated with multiple sclerosis including balance problems requiring the use of a cane, unsteady gait, memory problems, inability to concentrate, inability to stand unsupported for long periods of time and back pain which requires medication.  See ALJ Hearing Decision of 5/28/09 at 5 (A.R (Administrative Record) at 92).  Plaintiff also testified that daily injections of medication to treat his multiple sclerosis has severe side effects, including flu-like symptoms such as chills and body aches and pains.  Pl. Mot. ¶  4 (Dkt. 8).  On October 6, 2006, Plaintiff filed an application for supplemental security income, alleging disability beginning in August 2001.  Plaintiff appeared before ALJ Ethel Revels on April 28, 2009 for a disability hearing.  Def. Mot. ¶ 6 (Dkt. 9).

On May 28, 2009, the ALJ issued her decision concluding that Plaintiff was not disabled.  ALJ Hearing Decision of 5/28/09 (A.R at 85).  The ALJ concluded, after consideration of the entire record, that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a)[1] with the following limitations:

- [Plaintiff] requires a sit/stand option; [he] can sit for 45 minutes and stand for 30 minutes;

- Plaintiff is limited to walking one block;

- Plaintiff requires simple, repetitive-type tasks due to moderate limitations in concentration for extended periods and in the ability to carry out detailed instructions due to residual symptoms from multiple sclerosis and depression;

- Plaintiff cannot work in extreme temperatures;

- Plaintiff cannot climb stairs, ropes, ladders or scaffolds;

---

[1] "Sedentary work" is defined as work [that] involves sitting with a certain amount of walking and standing as necessary to carry out other job duties and involves lifting no more than 10 pounds at a time and occasionally lifting or carrying light-weight items such as docket files and ledgers.  See 20 CFR §416.967(a).

- Plaintiff cannot work at hazardous heights or around dangerous machinery;

- Plaintiff must be in close proximity to a bathroom.

A.R at 91-92.

In finding that Plaintiff was not disabled, the ALJ determined that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not credible to the extent it was inconsistent with the ALJ's own residual functional capacity assessment. A.R at 93. The ALJ also held that Plaintiff's allegations and the opinions of Plaintiff's treating physicians, Dr. Rossman and Dr. Verbosky, "were not well supported by the objective medical evidence in the record and therefore not entitled to controlling weight."[2]  A.R. at 96. When the Appeals Council denied Plaintiff's request for review on October 25, 2010, the ALJ's decision became the final decision of the Commissioner.

Perrine appealed the ALJ's decision to this Court, and both parties filed motions for summary judgment. Pl. Mot (Dkt. 8); Def. Mot. (Dkt. 9). Magistrate Judge Binder recommended that this Court affirm the ALJ's decision (Dkt 12). In his objections to R&R affirming the findings of the Commissioner, Plaintiff challenges the Commissioner's decision on several grounds. Def. Mot. at 2 (Dkt. 8).

In particular, the Court will address two of Plaintiff's most salient objections. First, he argues that the ALJ's decision is not supported by substantial evidence. Id. at 6-7. Second, Plaintiff argues that the ALJ failed to give proper weight to Plaintiff's treating physicians. Id. at

---

[2] In an Attending Physician's Statement completed by Dr. Rossman on April 17, 2009, Rossman opined that Plaintiff "needs complete freedom to rest frequently without restriction" and can only "occasionally not repetitively," use his upper extremities. Rossman Attending Physician Statement (A.R. at 453). Dr. Verbosky also completed an Attending Physician's Statement in which he states that Plaintiff needs ten minutes to rest every two hours and cannot perform any work with his upper extremities. Verbosky Attending Physician Statement (A.R. at 458). Dr. Verbosky also limited Plaintiff to occasionally, but not frequently, lifting less than five pounds. Id. at 459.

7-8. After reviewing Plaintiff's objections and all of the parties' filings, the Court concludes that the failure of the ALJ to state her reasons for discounting the opinions of Doctors Rossman and Verbosky demonstrates a lack of substantial evidence supporting the ALJ's decision, warranting reversal and remand.

## III.    Discussion

### A.    Standard of Review

The Court reviews de novo those portions of the R&R to which a specific objection has been made.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Under 42 U.S.C. § 405(g), this Court's review is limited to determining whether the Commissioner's decision "is supported by substantial evidence and was made pursuant to proper legal standards."  Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Lindsley v. Comm'r of Soc Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

### B.    Clarification of the Record

While the Magistrate Judge's R&R adequately sets forth the legal principles governing social security cases, the Court notes for clarification of the record that some of the ALJ's findings of facts are incorrectly stated in the R&R.  The R&R states, "[a]t step two, the ALJ found that Plaintiff's hypertension, anemia, osteoarthritis, anxiety, personality disorder, attention deficit hyperactivity disorder ("ADHD") and post-traumatic stress disorder ("PTSD") were "severe" within the meaning of the second sequential step."  R & R at 6-7 (Dkt. 12).  The ALJ's actual finding was that at step two, the claimant had severe impairments of multiple sclerosis, depression and obesity.  A.R. at 90.  The R & R also states, "[a]t step four, the ALJ found that Plaintiff has no past relevant work."  R & R at 7 (Dkt. 12).  In fact, Plaintiff was previously

4

employed as a cake decorator and retail manager.  See Claimant's Work Summary of 4/27/09 (A.R at 214).

C.    **The Treating-Physician Rule**

When reviewing the medical record and evidence in a claim for disability benefits, an ALJ is bound by the "treating physician rule," which explains how much deference a court is to give to the opinions of the claimant's treating source.  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009).  The treating source's opinion must be given "controlling weight" if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  See 20 C.F.R. § 404.1527(d)(2).

Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must still determine how much weight to afford the treating source's opinion.  Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 550 (6th Cir. 2010).  The Social Security Administration sets out factors to be applied in determining the proper weight to give to a medical opinion.  20 C.F.R. § 404.1527(d)(2).  These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the amount of relevant evidence the medical source provides, how consistent the medical source's opinion is with the record as a whole, and whether the medical source is a specialist.  Id.  Furthermore, the ALJ's decision as to how much weight to give to a medical opinion must be supported by "good reasons" in its notice of determination or decision.  Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)).  "Good reasons" are "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

5

reasons for that weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996); see also 20 C.F.R. § 404.1527(d).

The "good reason" rule has two procedural safeguards for disability benefits claimants. First, the requirement that the ALJ give reasons for discounting a claimant's treating physician's opinion that the claimant is disabled helps the claimant understand an unfavorable decision in his case, where, otherwise, he "'might be especially bewildered when told by an administrative bureaucracy that [he] is not [disabled]. . . .'"  Wilson v. Comm'r. of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)).  The "good reason" rule also assists the Appeals Council and the reviewing federal courts in conducting adequate and meaningful review of a case.  Id.  Reversal and remand of a denial of benefits is proper even though "substantial evidence otherwise supports the decision of the Commissioner" when the ALJ fails to give good reasons for discounting the opinion of the Plaintiff's treating physician. See Wilson, 378 F.3d at 543-46 (a reviewing court "cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record of the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely").

**D.     The ALJ Opinion**

**1.     The ALJ Discounted Both the Plaintiff's Testimony and the Opinions of Plaintiff's Treating Physicians**

Turning now to the matter before the Court, in the ALJ decision issued on May 28, 2009, the ALJ held that Plaintiff's testimony was inconsistent with the medical record and that the opinions of the treating physicians, Drs. Rossman and Verbosky, were "inconsistent with the objective evidence as well as [Plaintiff's] testimony."  A.R. at 96.  The ALJ cited the following evidence to support her view that the opinions of the treating sources were inconsistent with the record evidence:  (i) a January 2008 evaluation by Dr. Rossman, which indicated that Plaintiff

was neurologically stable and that no further relapse activity was discovered, as well as statements by Plaintiff denying any loss of vision or double vision or chest pains and shortness of breath (see Rossman Notes of 1/23/08 at 1 (A.R. at 427-8)), (ii) that Plaintiff had shoveled snow during a snowstorm,[3] (iii) a July 1, 2008 neurological reassessment where Plaintiff showed no new multiple sclerosis relapse activity and was ambulatory without difficulty (see Rossman Notes of 7/1/08 at 1 (A.R. at 420)), and (iv) an October 13, 2008 evaluation where Plaintiff denied any double or blurred vision or any eye pain or pressure, was found to have no gross aphasia, had clear and fluent speech, and was able to walk with a steady, unassisted gait. See Hosler Letter of 10/13/08 at 2 (A.R. at 404).

The evidence convinced the ALJ that Plaintiff's limitations "will not interfere with the ability of the claimant to function independently, appropriately, effectively, and on a sustained basis," and she concluded that Plaintiff's allegations were inconsistent with the objective medical findings in the record and were, therefore, not entitled to controlling weight. A.R. at 96. The ALJ did not state how much weight was given to the treating sources, but noted "consideration has been given to the reports of the State agency medical consultant as well as to other treating, examining, and non-examining medical sources." Id.

### 2. The ALJ's Hypothetical Posed to the Vocational Expert Reflected that the ALJ Did Not Afford Controlling Weight to the Treating Physicians

At Plaintiff's administrative hearing, the ALJ asked an impartial Vocational Expert (VE) to take into account Plaintiff's age, experience, and background, as well as the limitations stated below in order to determine whether jobs existed in the local economy that Plaintiff would be vocationally qualified to perform:

[A person who] needs work that will allow for a sit/stand option; would not

---

[3] From this, the ALJ concluded that Plaintiff was "fairly active" in January of 2008. A.R. at 96.

require sitting for more than 45 minutes at a time or standing for more than 30 minutes at a time; no walking more than one block at a time. That work must be simple, repetitive type tasks, because there are moderate limitations in the ability to maintain concentration for extended periods, as well as to remember and carry out detailed instructions, and that is due to both symptoms from MS [multiple sclerosis] impairment, as well as the depression. Our hypothetical claimant also, in addition to those limitations, would need work that does not require him to operate in temperature extremes nor climb stairs. That work must not be at hazardous heights or around dangerous machinery, and I am incorporating in that [] no climbing of ropes, ladders or scaffolds. That work must allow for some proximity to a bathroom.

See Hr'g Tr. at 55 (A.R. at 75); A.R. at 97. These restrictions are consistent with the RFC finding that the ALJ later assigned Plaintiff. A.R. at 91-2. The VE responded that roughly 1,000 packager and 2,500 cashier jobs, which are light and unskilled, would be available in the southeast Michigan area. Hr'g Tr. at 56 (A.R at 76); A.R. at 97. A person of Plaintiff's background and limitations, according to the VE, would also be qualified to perform as a sorter (approximately 1,100 positions available), an assembler (approximately 1,000 jobs available), or as a general office clerk (approximately 1,000 positions available in the local area) – all of which are sedentary and unskilled. Id. The ALJ then asked the VE to assume all of her previously stated limitations, along with the additional limitations that the person use a cane for support and that the person be able to leave the worksite two times an hour for approximately five minutes at a time. Hr'g Tr. at 57 (A.R at 77). The VE responded that the need to be away from the workstation two times an hour for five minutes would preclude all work. Id. Although the ALJ had posed this alternative hypothetical, the ALJ rejected it and relied on the first hypothetical, as the first hypothetical was the one later incorporated into the ALJ's RFC finding. The ALJ concluded that, at the time Plaintiff filed for social security benefits, he was capable of securing work that existed in significant numbers in the national economy, and was therefore, not disabled under § 1612(a)(3)(A) of the Social Security Act. A.R. at 97.

In the relevant hypothetical question the ALJ posed to the VE, the ALJ omitted significant physical and mental limitations that were attributed to Plaintiff by Drs. Rossman and Verbosky.[4]  In his Attending Physician's Statement, Dr. Rossman opined that Plaintiff "requires complete freedom to rest frequently without restriction."  See Rossman Attending Physician Statement (A.R. at 453).  Dr. Rossman's conclusion that Plaintiff needs "complete freedom to rest" is a marked limitation that would have undoubtedly affected the VE's response to the hypothetical had it been included, considering the fact that the VE concluded that an individual who needs to be away from the worksite two times an hour for five minutes would be precluded from all work.[5]  Notably, Dr. Rossman also used the term "frequently," when describing how often Plaintiff would need breaks.  Finally, in his Attending Physician's Statement, Dr. Rossman also noted that Plaintiff could "occasionally, but not repetitively" use his upper extremities.  Id. (emphasis added).  In stark contrast, the ALJ concluded that Plaintiff was capable of performing "simple, repetitive type tasks" (A.R. at 95) and assigned Plaintiff an RFC to perform a full range sedentary work.

In his Attending Physician's Statement, Dr. Verbosky concluded that Plaintiff needed one ten-minute rest period every two hours.  Consistent with Dr. Rossman, Dr. Verbosky concluded that Plaintiff could not use his upper extremities repetitively over an eight-hour workday at all.  See Verbosky Attending Physician's Statement (A.R. at 458).  Thus, both treating physicians concluded that Plaintiff was limited in his ability to use his upper extremities repetitively over an

---

[4] Dr. Howard Rossman has been treating Plaintiff for multiple sclerosis at the Michigan Institute for Neurological Disorders from January of 2002 to the present.  Dr. John Verbosky was Plaintiff's general physician from April 2007 to the date of Plaintiff's administrative hearing.

[5] A requirement of complete freedom to rest frequently without interruption does not limit Plaintiff to being away from the work site two times an hour; the number of instances Plaintiff may need to be away could be higher and the duration of the rest period could, arguably, be longer than five minutes.

eight-hour workday.   These conclusions were not included in the ALJ's hypothetical.
Furthermore, the ALJ's hypothetical omitted a number of impairments that Dr. Verbosky noted
in his Attending Physician's Statement.   These impairments and/or their corresponding
workplace requirements include:

- Plaintiff needing to lie down repetitively for a substantial period during the day.  Id. at
  459.

- A sit/stand option that was more restrictive than the sit/stand option included in the ALJ's
  hypothetical; specifically, Dr. Verbosky suggested that Plaintiff could only stand and
  walk for a total of one hour or less during an eight-hour workday and that Plaintiff could
  sit for only a total of one to two hours during an eight-hour workday.[6] Id. at 459-60.

- Dr. Verbosky also opined that Plaintiff had "incoordination of extremities," "easy
  fatigability," and "visual impairments."  Id. at 460.

Because the ALJ's hypotheticals (and more particularly, the hypothetical the ALJ relied
upon) did not include the limitations set by Drs. Rossman and Verbosky, it is clear that the ALJ
did not afford the treating physicians controlling weight.

### E.    Analysis

The ALJ was correct that if a treating source's opinion is not well supported by medically
acceptable clinical techniques and is inconsistent with other substantial evidence in the record, it
is not entitled to controlling weight.  See Tilley v. Comm'r of Soc. Sec., 394 F. App'x 216, 222
(6th Cir. 2010).  However, courts in this jurisdiction have required an ALJ who does not give
controlling weight to a treating physician's opinion to nevertheless affirmatively consider how
much weight to afford such opinions.  See Friend, 375 F. App'x at 550; Karger v. Comm'r of
Soc. Sec., 414 F. App'x 739 (6th Cir. 2011) (remand was warranted where the ALJ's decision

---

[6] In the hypothetical the ALJ posed to the vocational expert, the ALJ placed a limitation on
how long Plaintiff could sit or stand at a given time, but the hypothetical did not take into
account the total amount of sitting and standing that Plaintiff could withstand in an eight-
hour workday.

failed to specify the weight determinations given to each treating source opinion and failed to base the RFC on treating source's opinions). The ALJ's decision as to how much weight to afford a treating source must be accompanied by "good reasons" that are supported by evidence from the record, be sufficiently specific for any subsequent reviewers, and state the reasons for the weight given. Friend, 375 F. App'x at 550 (quoting Soc. Sec. Rul 96-2p).

In this case, the ALJ did not make any specific weight determinations in regards to the opinions of Drs. Rossman and Verbosky. The ALJ only stated that Plaintiff's allegations were not entitled to controlling weight and that "consideration" had been given to the treating sources. The Court finds this insufficient, as it does not satisfy the twin procedural goals of enabling a reviewing court to conduct a meaningful review and enabling a claimant to understand the disposition of his case.

Furthermore, assuming that the ALJ afforded the treating sources little or no weight, the Court finds that the reasons given by the ALJ for disregarding the opinions of Drs. Rossman and Verbosky and imposing an RFC that is contrary to the findings of the treating source physicians do not constitute "good reasons." The reasons given by the ALJ to support the conclusion that the treating source opinions were "inconsistent" with record evidence, such as Plaintiff's stable neurological condition, lack of double vision, chest pains or shortness of breath, are not things that are contrary to the attending physician's statements.[7] The ALJ did not explain how these findings refute the limitations opined by Dr. Rossman (who stated in his Attending Physician's Statement that Plaintiff needed complete freedom to rest and could not repetitively use his upper extremities over an eight-hour workday) and Dr. Verbosky (who also stated that Plaintiff could

---

[7] It is odd that in concluding that Dr. Rossman is not credible, the ALJ cites Rossman's own records. This seems contradictory as the ALJ finds Rossman's notes to be persuasive evidence that Plaintiff is not disabled, yet discredits Rossman's own conclusions of Plaintiff's physical limitations, which are presumably based upon his own notes and findings.

not repetitively use his upper extremities and also needed to lie down repeatedly, was easily fatigued, had trouble coordinating his upper extremities, and was not capable of sitting, standing, or walking for a duration of time).  See A.R. at 453; 458.  None of the evidence cited by the ALJ takes into account or refutes the lifting, extended standing, extended walking, or sitting restrictions Drs. Rossman and Verbosky had noted in their Attending Physician's Statements.

The Court notes that many, if not all, of the records the ALJ cited simply concern different symptoms and ailments than those upon which the treating sources based their findings. Thus, the resolution of the symptoms and ailments cited by the ALJ does not provide legitimate reason to reject the treating sources' findings.  For example, the ALJ noted an October 2008 evaluation where Plaintiff denied any blurred or double vision or any eye pain or pressure (after Plaintiff had complained of, and received medication for, double vision in September of 2008). A.R. at 96.  A closer review of the medical record shows that the double vision Plaintiff claimed of in September 2008 was a result of an urgent and separate medical condition (a noticeable intranuclear opthalmoplegia in the left eye) which resolved after Plaintiff was given medication. See Hosler Letter of 10/13/08 at 1 (A.R. 403); Hosler Letter of 9/4/08 at 1 (A.R. 411).  The answers Plaintiff gave at his evaluation in October denying double or blurred vision were in response to a follow-up examination of the medical incident that had occurred in the previous month.  There is no indication that the isolated medical incident was related to Plaintiff's multiple sclerosis or that it was a factor that contributed to the restrictions opined by Drs. Rossman and Verbosky in their Attending Physician's Statements.  Therefore, this recovery from an isolated medical ailment is not sufficient to support the ALJ's conclusion that the overall medical record is inconsistent with the opinions of Drs. Rossman and Verbosky.[8]

---

[8] In addition, a single instance where Plaintiff shoveled snow in January of 2008 is not sufficient to disprove the treating source physicians' opinions of Plaintiff's limitations.  This is

Lastly, the ALJ noted that the opinions of the treating sources were "inconsistent with the objective evidence" as a reason not to afford them controlling weight.  A.R. at 96.  The ALJ then assigned Plaintiff an RFC that stated that Plaintiff was able to do work that was contrary to the restrictions opined by his treating sources.  A.R. at 91-92.  Even where the conclusion of a treating physician is inconsistent with other evidence in the record, it does not necessarily mean that such an opinion may be entirely rejected – it may nonetheless be entitled to some degree of deference and must be weighed using the factors outlined in 20 C.F.R. § 404.1527.  Blakley, 581 F.3d at 408.  As the Sixth Circuit has expressed, "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick."  Friend, 375 F. App'x at 552.

In Friend, the ALJ's rationale for discounting the opinion of one treating physician was as follows:  "the testimony of Dr. Nusbaum, which would allow the claimant to stand/walk for one hour [at a] time to a total of six hours in an eight hour workday, is more consistent with the objective medical findings," and "there is no basis for Dr. Angerman's [the treating physician's] conclusion that the claimant can stand/walk for only one hour in a day."  Id. at 551.  The Sixth Circuit held that this was not "sufficiently specific" to meet the requirements of the good-reason rule because the ALJ's reasons neither identified the "objective clinical findings" at issue nor discussed their inconsistency with the opinion of Dr. Angerman, the treating physician.  Id.  The Friend court noted that while a lack of compatibility with other record evidence affects the weight an ALJ affords a treating source's opinion, "an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the

---

particularly so when one considers that Plaintiff alleged disability beginning in 2001 and claimed to continue to be disabled through his 2009 disability hearing.

'good reason' rule."[9]  Id.

The Sixth Circuit has explained that in certain circumstances, an ALJ's violation of the rule does not necessarily warrant remand and may constitute "harmless error" if (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," or (3) "where the Commissioner has met the procedural safeguards [of the rule] even though he has not complied with the terms of the regulation."  Wilson v Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004).[10]  Thus, strict conformity with this procedural rule can sometimes be excused if the ALJ's opinion sufficiently enables reviewing courts and the claimant to understand the reasons for the weight given to a treating physician's opinion.

In this case, the ALJ did not give sufficient reasons for not affording the opinions of the treating sources – Dr. Rossman and Dr. Verbosky – controlling weight.  The reasons given by the ALJ to support her conclusion that Plaintiff's allegations were inconsistent with the objective medical record were insufficient as they neither identified relevant objective medical evidence that directly refuted the opinions of the physicians nor did they discuss the purported inconsistencies with the treating source's opinions of Plaintiff's physical limitations in the Attending Physician's Statements.  In addition, the ALJ did not indicate how much weight she afforded the opinions of the treating physicians by taking into account the factors outlined in the regulations pursuant 20 C.F.R § 404.1527(d)(2)-(6).

---

[9] Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (requiring an ALJ decision as to how much weight to accord a medical opinion be accompanied by "good reasons" that are "supported in evidence in the record, and be sufficiently specific . . . .")

[10] In the last circumstance, an example of where the procedural protections of the rule may be met is where the treating source's opinion and consistency with other record evidence is indirectly attacked by the ALJ through the ALJ's analysis of the physician's other opinions or through the ALJ's thorough analysis of the claimant's ailments.  Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 470-72 (6th Cir. 2006).

In this case, the ALJ's error was not "harmless." For a VE's testimony in response to a hypothetical question to serve as substantial evidence that a claimant can perform other work, the hypothetical question must accurately portray the claimant's physical and mental impairments. Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2010). The hypothetical posed by the ALJ to the VE at Plaintiff's disability hearing omitted certain physical limitations offered by Drs. Rossman and Verbosky in their Attending Physician's Statements. In particular, the controlling hypothetical excluded Plaintiff's limited ability to use his upper extremities and his requirement for rest as well as his sitting and standing requirements. Because the ALJ did not offer any reason for its rejection of Dr. Rossman's opinion that Plaintiff needed "complete freedom to rest" and that Plaintiff could not repetitively use his upper extremities, the Court cannot evaluate the legitimacy of the ALJ's decision to afford these treating-physician conclusions little or no weight. Accordingly, the Court can only conclude that the hypothetical was flawed in that it did not adequately convey Plaintiff's requirements and limitations as set out by his treating physicians (and not refuted by the ALJ). See Edwards v. Barnhart, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005) (controlling hypothetical question limiting Plaintiff to simple, routine, and unskilled work did not fully convey to the vocational expert the Plaintiff's ability to concentrate and keep pace). The flawed hypothetical was then relied upon by the VE to determine that there were a number of jobs available which Plaintiff was qualified to perform. The ALJ then relied upon this flawed conclusion to conclude that Plaintiff was not disabled.

Because each event in this chain occurred as a result of the ALJ's rejection of the treating physicians' conclusions, which was not sufficiently justified under the applicable legal standards, the ALJ's conclusion that Plaintiff is not disabled is not supported by substantial evidence.

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 8) is granted and Defendant's motion for summary judgment (Dkt. 9) is denied.  The Court orders that the case be remanded to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.


Dated:  March 21, 2012                                  s/Mark A. Goldsmith
       Flint, Michigan                                 MARK A. GOLDSMITH
                                               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 21, 2012.

                                               s/Deborah J. Goltz
                                             DEBORAH J. GOLTZ
                                             Case Manager